UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
ERNEST IVERSON, *pro se*,

                           Petitioner

       -against-

WILLIAM A. LEE

                           Respondent.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
10-CV-1689 (SLT)

**SANDRA L. TOWNES, United States District Judge:**

       Petitioner Ernest Iverson, who is incarcerated pursuant to a judgment of the New York State Supreme Court, Kings County, petitions this Court for a writ of *habeas corpus* under 28 U.S.C. § 2254. Following a jury trial, petitioner was convicted of one count of Murder in the Second Degree, three counts of Assault in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree. Iverson was adjudicated a second felony offender and sentenced to consecutive prison terms of twenty-five years to life for the murder conviction and twenty years for one of the assault convictions. He was also sentenced to concurrent terms of eight years for each of the remaining assault convictions and ten years for the weapon possession conviction. In the instant petition, petitioner, appearing *pro se*, raises two arguments: (1) his federal Constitutional rights were violated due to the trial court's failure to give a missing witness charge; and (2) the evidence at trial was legally insufficient. Petitioner also moves to amend his petition with two additional claims.

       For the reasons set forth below, petitioner's motion to amend his petition is denied, and the petition is denied in its entirety.

## *BACKGROUND*

### *Underlying Criminal Case*

       On September 7, 2002, Kevin Robinson was killed and three other men were injured in a shooting that took place outside of a public housing apartment building located at 418 Jerome Avenue in the East New York neighborhood of Brooklyn. Following an investigation, petitioner was arrested. At trial, the prosecution presented witnesses who testified that Robinson was a member of a street gang prior to joining the United States Navy in March of 2001. In September 2002, Robinson and his friend and fellow sailor Jody Brown returned to Robinson's neighborhood in East New York while on leave from the Navy. They spent time with two of Robinson's friends, referred to at trial as O.J. and B.A., who were members of Robinson's former street gang.

A few days after Robinson and Brown arrived in New York, Robinson, Brown, O.J. and B.A. were buying snacks from a convenience store when Robinson engaged in a fistfight with Steve Perkins, a friend of petitioner. The following day, Robinson, Brown, O.J. and B.A. were playing basketball when Perkins, Tarik Philips, and others arrived to discuss the fight from the night before. Approximately one or two days later, petitioner was the target of a drive-by shooting. On September 7, 2002, petitioner and his accomplices sought retribution against Robinson's group. After learning that Robinson was playing dice outside the public housing complex located at 418 Jerome Avenue, Iverson and approximately five of his cohorts (including Perkins and Philips) armed themselves with guns and traveled to that building. They entered through the back of the housing complex and assembled in the vestibule near the building's front entrance. The group then rushed out of the building and immediately began firing. Though petitioner was armed, he claimed he did not fire his weapon because he was scared. Robinson was struck approximately five times and died in the emergency room. At least three others received gunshot wounds.

## *The Trial & Verdict*

Iverson was subsequently indicted on twenty-two counts, including two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25(1), (2)); one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)); one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)); six counts of Assault in the First Degree (N.Y. Penal Law § 120.10(1), (3)); three counts of Gang Assault in the First Degree (N.Y. Penal Law § 120.07); and, nine counts of Assault in the Second Degree (N.Y. Penal Law § 120.05(1), (2), (4)). None of the counts in the indictment limited the People to proving that Iverson himself had committed the crimes charged. Rather, each count alleged that Iverson, while "acting in concert with other persons," had committed the criminal acts alleged. In June 2005, Iverson went to trial before a jury.[1] Iverson was convicted of one count of Murder in the Second Degree pursuant to N.Y. Penal Law § 125.25(1), three counts of Assault in the First Degree pursuant to N.Y. Penal Law § 120.10(1), and one count of Criminal Possession of a Weapon in the Second Degree pursuant to N.Y. Penal Law § 265.03(2).

Iverson was adjudicated a second felony offender and sentenced to consecutive prison terms of twenty-five years to life for the murder conviction and twenty years for one of the assault convictions. He was also sentenced to concurrent terms of eight years for each of the remaining assault convictions and ten years for the weapon possession conviction.

## *Direct Appeal*

Petitioner raised several arguments on appeal, including: (1) the evidence was legally insufficient to support the verdict, and further, the verdict was against the weight of the evidence, (2) he was deprived of a fair trial because the trial court declined to issue a missing witness charge, (3) that the trial court erred in denying his request for a circumstantial evidence charge,

---

[1] Petitioner was charged along with three co-defendants. Barry Morgan and Rashawn Edwards each pled guilty to first-degree manslaughter. Tarik Philips was tried simultaneously with Iverson before a separate jury.

and (4) he was denied a fair trial because the jury heard testimony that petitioner was a drug dealer. The Appellate Division, Second Department affirmed petitioner's conviction in its entirety. *People v. Iverson*, 866 N.Y.S.2d 366 (2d Dep't 2008).

On January 16, 2009, the New York State Court of Appeals denied leave to appeal. *People v. Iverson*, 874 N.Y.S.2d 11 (2009).

### *The Instant Petition*

Petitioner timely filed a petition for a writ of *habeas corpus* on April 9, 2010.

## *STANDARD OF REVIEW*

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

A federal district court may grant a writ of *habeas corpus* to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## *DISCUSSION*

### A. *Missing Witness Charge*

3

Petitioner contends that he was denied due process when the trial court declined to issue a missing witness charge. In his opening statement, the prosecutor claimed that he would call an eyewitness who would testify that he saw Iverson with a gun prior to the shooting. After the state failed to call this eyewitness, Iverson's counsel moved for a missing witness instruction. The prosecutor explained to the court that he had expected the eyewitness to testify based on the witness's grand jury testimony, but that the state had since been unable to locate the witness for trial. The eyewitness refused to testify and said that if he were compelled to testify that he would say he did not see anything. Additionally, the witness's mother and father both called the prosecutor and explained that their son's life would be in danger if he testified. The police could not locate the witness at home, at work, or with friends and relatives. The trial court denied the application for a missing witness charge because it determined that the witness was not under direction or control of the state.

The Appellate Division ruled that this claim was untimely because the charge was requested after both sides had rested. *Iverson*, 866 N.Y.S.2d at 367. Given that the Appellate Division denied this claim on state procedural grounds and petitioner makes no attempt to argue that an exception to the procedural bar doctrine applies, this Court holds that this claim is procedurally barred. It would offend principles of comity and federalism for this Court to grant *habeas* review of petitioner's procedurally barred claim, and accordingly, that claim is DENIED.

Even assuming that the request for a missing witness charge was timely, given the vast amount of discretion afforded to the trial court, Iverson's claim was also properly denied on the merits. *See Guerrero v. Payant,* 2010 U.S. Dist. LEXIS 61723 (E.D.N.Y. June 21, 2010). The trial court found that the witness's expected testimony was consistent with Iverson's own admission that he had a gun. The trial court further found that the witness was not available to the prosecution at the time of trial. Furthermore, "the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure so infected the entire trial that the resulting conviction violated due process." *Jones v. Rivera,* 2008 U.S. Dist. LEXIS 37445, at *42 (E.D.N.Y. May 7, 2008) (internal citations omitted). It is entirely speculative to suggest that the state's failure to call the missing eyewitness and the court's failure to give the missing witness charge had any impact on the trial.

### B. *Sufficiency of the Evidence*

As this Court has previously stated in its Memorandum and Order dated February 25, 2013, the second ground raised in Iverson's petition suggests at least four arguments: (1) a "weight of the evidence" claim, (2) the sufficiency argument raised on direct appeal, (3) a "prejudicial variance" claim, and (4) a "constructive amendment" claim. In its Memorandum and Order dated March 13, 2013, this Court made known its intention to construe this ground as raising only the sufficiency argument that was exhausted on direct appeal, unless petitioner requested otherwise. No such request has been made and so the Court will construe the petition as raising a sufficiency of the evidence argument.

4

The Appellate Division's finding that upon "viewing the evidence in the light most favorable to the prosecution," the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." is not contrary to or an unreasonable application of clearly established federal law, nor is it based upon an unreasonable determination of the facts. There is sufficient evidence in the record from which a rational juror could have found that petitioner acted in concert with the men who shot Robinson and the others, and is therefore guilty of Murder in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Second Degree. Petitioner's contention that the People failed to prove beyond a reasonable doubt that he shared the same intent as the other gunmen is rejected. Based on the evidence presented at trial, petitioner's intent to commit the crimes for which he was convicted is evident. Significantly, the evidence showed that petitioner and his friends sought retribution against a rival group for an attempt on petitioner's life, that they armed themselves upon learning where Robinson was located, and sought him out. Numerous shots were fired from multiple guns and Robinson was repeatedly shot at from a range for two to three feet away.

Contrary to petitioner's argument, Iverson may still be found guilty under accomplice liability even if he did not ultimately shoot any of the victims. *People v. Ficarrota*, 668 N.Y.S.2d 993 (1997). Accordingly, Iverson's petition on this ground is DENIED.

### C. *Petitioner's Motion to Amend his Petition*

The Court is in receipt of petitioner's letter dated June 11, 2013 entitled "Reply to Respondent's Affirmation to Petitioner's Writ of Habeas Corpus." Petitioner writes that he "moves to amend his writ of habeas corpus petition" in order to incorporate Points II and III from his brief on direct appeal. In his appellate brief, petitioner argued that he was denied his right to a fair trial because: the trial court denied his request for a circumstantial evidence charge (Point II), and further, one of the Prosecution's witnesses characterized petitioner and others as "rival drug dealers" (Point III).

Petitioner's letter seeking amendment was filed well after AEDPA's statute of limitation period had run. A "claim raised for the first time after the limitations period has expired must 'relate back' to an initial timely petition." *Delutro v. United States*, 2014 U.S. Dist. LEXIS 130757, *14 (E.D.N.Y. Sept. 16, 2014) (internal citations omitted). An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out ... in the original pleading." Fed. R. Civ. P. 15(c). In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court addressed how this rule applies to amendments to *habeas* petitions. The Court concluded that *habeas* claims that are otherwise untimely will relate back when "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* at 664.

1. *Circumstantial Evidence Charge*

Petitioner first attempts amend his petition to add the argument raised in Point II of his brief on direct appeal, namely to that the trial court erred in not giving a circumstantial evidence charge to the jury. In criminal cases "which depend entirely upon circumstantial evidence [,] ... the facts from which the inference of the defendant's guilt is drawn must be established with certainty—they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis." *Floyd v. Miller*, 2003 WL 21845995, at *7 (E.D.N.Y. Aug.6,

5

2003) (internal citations omitted). A case that includes any direct evidence, or a combination of direct and circumstantial evidence, "does not qualify for the circumstantial evidence instruction." *People v. Roldan*, 643 N.Y.S.2d 960 (1996).

This claim does not relate back to Iverson's initial petition. The initial pleading did not allege that the court erred in not giving a circumstantial evidence charge. The fact that the initial petition and the proposed amended claim relate to the same stage of the proceeding is insufficient to establish relation back because the new claim arises from a wholly new set of facts. *See Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (citing *Felix*, 545 U.S. at 656-57).

Furthermore, even if the claim did relate back to the initial petition, amendment is denied as futile. The Appellate Division found petitioner's argument that the trial court erred in declining to give a circumstantial evidence charge to be without merit. *People v. Iverson*, 866 N.Y.S.2d at 367. This Court agrees. At trial, the People introduced direct evidence of petitioner's guilt. Specifically, in his videotaped pretrial statement, petitioner described how conflicts between his group of friends and Robinson's group of friends had escalated to the point where Iverson and others sought out Robinson as retribution for a failed drive-by shooting attempt. This video was presented to the jury. Petitioner further admitted that when a member of his group stated that he "wanted" Robinson, petitioner retrieved his gun, and accompanied the other armed men to where they knew Robinson was located. He admitted that members of his group charged through the front door and began firing immediately, which was consistent with eyewitness testimony. These admissions constitute direct evidence. *See People v. Licitra*, 419 N.Y.S.2d 461 (1979) ("defendant's own admissions...constitute direct evidence of many of the principal facts in issue"). Additionally, Iverson makes no claim that the failure to issue the instruction "so infected the entire trial that the resulting conviction violated due process." *Jones*, 2008 U.S. Dist. LEXIS 37445 at *42.

2. *Characterization of Iverson as a Drug Dealer*

Petitioner also seeks to amend his petition to add a claim that his due process rights were violated when the arresting detective stated at trial that Iverson, O.J., and B.A. were rival drug dealers.

As with petitioner's amendment relating to the circumstantial evidence charge, this claim does not relate back to Iverson's initial *habeas* petition. It arises out of a wholly separate set of facts than those alleged in the initial petition. Accordingly, petitioner's motion to amend is denied.

Additionally, Iverson's motion to amend is denied as futile. The Appellate Division found that this argument was unpreserved for appellate review. *See People v. Iverson*, 866 N.Y.S.2d at 367. Given that the Appellate Division denied this claim on state procedural grounds and petitioner makes no attempt to argue that an exception to the procedural bar doctrine applies, this Court holds that this claim is procedurally barred. It would offend principles of comity and federalism for this Court to grant *habeas* review of Petitioner's procedurally barred claim.

## CONCLUSION

Petitioner's motion to amend is denied. The application for a writ of *habeas corpus* is denied, and the petition is dismissed. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112-13 (2d Cir. 2000). The Clerk of Court is directed to enter judgment denying the petition and closing this case.

**SO ORDERED.**

/s/ Sandra L. Townes

SANDRA L. TOWNES
United States District Judge

Dated: February 24, 2015
Brooklyn, New York